1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

JEFFERY VALE, et al.,

7                                    Plaintiffs,

8          v.

CITY OF SEATTLE, et al.,

9

10                                   Defendants.

Case No. 2:23-cv-01095-TLF

ORDER ON DEFENDANTS'
MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT

11          This matter comes before the Court on Defendants' -- the City of Seattle ("City");

12   City Fire Department ("Fire Department") Chief Harold Scoggins ("Chief Scoggins");

13   former Human Resources Director of the Fire Department Andrew Lu ("Mr. Lu"); current

14   Human Resources Director of the Fire Department Sarah Lee ("Ms. Lee"); Abigail

15   Elizabeth Scoggins ("Ms. Scoggins"); Tzu Hsin Lin ("Ms. Lin"); and Thaddeus James

16   Hodge, II ("Mr. Hodge") -- motion to dismiss Plaintiffs' First Amended Complaint

17   pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkts. 34, 38.

18          For the following reasons, the Court GRANTS in part and DENIES in part

19   Defendants' motion to dismiss.

20

21                                      **BACKGROUND**

22          The facts alleged in the First Amended Complaint (Dkt. 34) are assumed to be

23   true only for the purposes of reviewing this motion. *United States v. Corinthian Colls.,*

24   655 F.3d 984, 991 (9th Cir. 2011)

25

ORDER ON DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT - 1

Plaintiffs, who comprise of 39 individuals, are current or former employees of the Fire Department. Dkt. 34 at 2, ¶1. On August 9, 2021, Mayor Durkan issued Mayoral Directive #9, which required all City employees to be vaccinated against COVID-19 by October 18, 2021, unless a religious or medical exemption applied. *Id.* at 28, ¶¶ 89-90. Of the 39 Plaintiffs, 34 applied for an exemption based on religious beliefs. *Id.* at 24, ¶65. While some Plaintiffs retired or resigned from employment with the Fire Department following implementation of the vaccine requirement, others had their employment terminated, or remain employed. *Id.* at 2, ¶ 1; at 20, ¶ 49  f.1; at 24, ¶ 65 f.2.

On February 8, 2024 (Dkt. 34), Plaintiffs filed their First Amended Complaint alleging that the City's COVID-19 vaccination requirement violated federal and state laws. The First Amended Complaint asserts ten causes of action: (1) under 42 U.S.C. § 1983, violations of U.S. Constitutional Amendments V and XIV; violation of Wash. Const. Art. I § 3 -- deprivation of life, liberty, or property without due process; (2) wage theft; (3) breach of contract; (4) violation of the Washington Law Against Discrimination ("WLAD") – failure to accommodate; (5) violation of the WLAD – disparate impact; (6) under 42 U.S.C. § 1983, violations of U.S. Constitutional Amendments I and XIV -- deprivation of religious freedom; (7) violation of right to be free from arbitrary and capricious action; (8) public policy tort claim against religious discrimination; (9) wrongful termination – retaliation in violation of WLAD; (10) under 42 U.S.C. § 1983, violation of U.S. Const. Amend V takings clause; and violation of Wash. Const. Art. 1, Sec. 16 takings clause. Dkt. 34 at 89-105. Plaintiffs seek monetary damages for back pay and front pay, loss of benefits, loss of pension rights, double damages under RCW

§ 49.52.070 for lost wages, damages for violations of constitutional and statutory rights, and attorney's fees, against Defendants. *Id.* at 105-106.

Defendants move for dismissal of Plaintiffs' First Amended Complaint and assert that it fails to comply with Federal Rule of Civil Procedure ("FRCP") 8, or in the alternative, that each of the individual Defendants should be dismissed because the allegations against them do not meet the requirements of FRCP 8. Dkt. 38. Defendants further argue that each cause of action should be dismissed for failure to state a claim upon which relief can be granted. *Id.* The Plaintiffs filed a response, the Defendants filed a reply, and the Court heard oral argument. Dkts. 44 45, 48.

## STANDARD OF REVIEW

A.  Federal Rule of Civil Procedure 12(b)(6)

The Court's review of a motion to dismiss under FRCP 12(b)(6) is limited to the complaint and documents incorporated into the complaint by reference. *Khoja v. Orexigen Therapeutics Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A motion to dismiss may be granted only if plaintiff's complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in the complaint as true, the Court does not accept as true a "legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984). "A district court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities." *AE ex rel. Hernandez v. County of Tulare,* 666 F.3d 631, 636 (9th Cir. 2012).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) they suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional or statutory right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or

1   personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*,

2   637 F.2d 1350, 1355 (9th Cir. 1981).

3   **DISCUSSION**

4   A.  Federal Rule of Civil Procedure 8

5   Rule 8(a)(2) requires that the claim for relief contain "a short and plain statement of

6   the claim showing that the pleader is entitled to relief." Similarly, Rule 8(d)(1) requires

7   "[e]ach allegation [to] be simple, concise, and direct." In considering whether a

8   complaint conforms to Rule 8, the Ninth Circuit has explained, "a dismissal for a

9   violation under Rule 8(a)(2), is usually confined to instances in which the complaint is so

10  'verbose, confused and redundant that its true substance, if any, is well disguised.' "

11  *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969) (quoting *Corcoran v.*

12  *Yorty*, 347 F.2d 222, 223 (9th Cir. 1965)).

13  But "verbosity or length is not by itself a basis for dismissing a complaint based on

14  Rule 8(a)." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008).

15  To warrant dismissal under Rule 8(a), a complaint would have allegations that are

16  overly confusing, ambiguous, vague, conclusory, redundant, or irrelevant -- obfuscating

17  the substance of the core allegations. *See id.* at 1130-32 (collecting cases).

18  Defendants have not shown Plaintiffs' First Amended Complaint violates the

19  requirements of Fed. R. Civ. P. 8. Defendants argue that the First Amended Complaint,

20  which includes 190 pages of "extraneous exhibits" should be dismissed because it is

21  "not simple, concise, and direct" and does not contain and "short and plain statement of

22  the claim showing that the pleader is entitled to relief." Dkt. 38 at 6-7. But the motion

23

24

25

1  does not demonstrate the First Amended Complaint in and of itself violates Fed. R. Civ.

2  P. 8.

3      At its root, Defendants challenge is directed at the length of the First Amended

4  Complaint and its attachments, rather than arguing that the Plaintiffs have made

5  confusing allegations. Yet, sheer length and verbosity are not reasons to strike the First

6  Amended Complaint and order it repleaded. *See Hearns*, 530 F.3d at 1130-32.

7      With respect to the Defendants' challenge to the attachments that accompany the

8  First Amended Complaint -- when assessing the sufficiency of a complaint under Rule

9  12(b)(6), generally the Court may not consider material outside the pleadings. *Lee v.*

10 *City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also* Fed. R. Civ. P. 12(d).

11 "There are two exceptions to this rule: the incorporation-by-reference doctrine, and

12 judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics,*

13 *Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Tellabs, Inc. v. Makor Issues & Rts.,*

14 *Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as

15 well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to

16 dismiss, in particular, documents incorporated into the complaint by reference, and

17 matters of which a court may take judicial notice.").

18     Rule 201 of the Federal Rules of Evidence provides that courts may take judicial

19 notice of "adjudicative fact[s]" that are "not subject to reasonable dispute," meaning the

20 fact "can be accurately and readily determined from sources whose accuracy cannot

21 reasonably be questioned." Fed. R. Evid. 201(a)–(b). But Courts are not allowed to take

22 judicial notice of *disputed* facts contained in documents that contain other facts

23

24

25

ORDER ON DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT - 6

susceptible to judicial notice. *See Khoja*, 899 F.3d at 999. The Court must "clearly

specify" the fact or facts being judicially noticed. *Id.*

"Unlike rule-established judicial notice, incorporation-by-reference is a judicially

created doctrine that treats certain documents as though they are part of the complaint

itself." *Id.* at 1002. The doctrine is designed to prevent plaintiffs "from selecting only

portions of documents that support their claims, while omitting portions of those very

documents that weaken—or doom—their claims." *Id.*

A document may be incorporated by reference into a complaint if it either:

- "forms the basis of [a] plaintiff's claim" or

- is referred to "extensively" by the plaintiff. *United States v. Ritchie*, 342 F.3d 903,

  908 (9th Cir. 2003). For a reference to be sufficiently "extensive," a document

  should be referred to "more than once." *Khoja*, 899 F.3d at 1003. But "a single

  reference" could, in theory, satisfy the standard if the reference is "relatively

  lengthy." *Id.*

Generally, and unlike judicial notice, district courts "may assume [an incorporated

document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."

*Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *Ritchie*, 342 F.3d at 908). It

is improper, however, for courts "to assume the truth of an incorporated document if

such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*,

899 F.3d at 1003. Thus, courts must be cautious when drawing inferences from

incorporated documents. *Id.*

Defendants argue that the following exhibits to Plaintiffs' amended complaint do not meet the criteria under Fed. R. Evid. 201(a)–(b) for the Court to take judicial notice of the documents:

- Exhibit K – Washington State Department of Health, SARS-CoV-2 Vaccine Breakthrough Surveillance and Case Information Resource

- Exhibit L – Centers for Disease Control Presentation, "Update on Emerging SARS-CoV-2 Variants and COVID-19 Vaccines"

- Exhibit CF – Equal Employment Opportunity Commission, "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws"

- Exhibit CG – "Risk for Acquiring COVID-19 Illness Among Emergency Medical Service Personnel Exposed to Aerosol-Generating Procedures" article

- Exhibit CO – "Past SARS-CoV-2 infection protection against re-infection: a systematic review and meta-analysis" article

- Exhibit DB – Arbitration Decision In the Matter of the Arbitration Between State of Washington, Department of Corrections and Teamsters Local Union No. 117

Generally, a court may take judicial notice of government publications. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1088 (N.D. Cal. 2017). Although these government report documents potentially would be proper for judicial notice, the Court need not consider the facts asserted in the documents to resolve the motion to dismiss. Thus, the Court will not take judicial notice of Exhibits K, L, and CF.

With respect to Exhibits CG and CO, these articles discuss the risk for acquiring COVID-19 among emergency medical service personnel and the risk of re-infection. A court may generally take judicial notice of news articles, but it may only do so to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *All. Premier Growth Fund v. All. Capital Mgmt. L.P.*, 435 F.3d 396, 400 n. 14 (3d Cir. 2006)). Again, the Court need not consider the facts contained in these publications to resolve the motion to dismiss. Accordingly, the Court will not take judicial notice of Exhibits CG and CO.

Finally, with respect to Exhibit DB, an arbitration decision that involves a non-party, the Court declines to take judicial notice of the decision because Plaintiffs offer the arbitration decision exhibit for the truth of disputed matters decided therein (namely, whether the City satisfied its duties regarding the reasonable "accommodation process). But the Court will consider Exhibit DB nonetheless; this exhibit is proper under incorporation-by-reference doctrine. It is specifically referred to several times in the First Amended Complaint. Dkt. 34 at 82, 85-86. *Khoja*, 899 F.3d at 1003.

B.  Claims against Individual Defendants

Defendants argue that Plaintiffs' First Amended Complaint should be dismissed because the individual Defendants were not mentioned in any of Plaintiffs' causes of action.

To state a claim for relief against individual defendants under 42 U.S.C. § 1983, Plaintiff must allege that each defendant personally participated in the deprivation of

constitutional rights. *Iqbal*, 556 U.S. at 673; *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014).

Liability may not be imposed on supervisory personnel for the acts or omissions of their subordinates under the theory of *respondeat superior*. *Iqbal*, 556 U.S. at 672-673; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). A supervisor can be held liable in their individual capacity under § 1983 only if (1) they personally participated in the constitutional violation, or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989).  Moreover, for liability to attach, supervisors must have actual supervisory authority over the government actor who committed the alleged violations. *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018).

Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. The "mere possibility of misconduct" falls short of meeting the *Iqbal* plausibility standard. *Id*.

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988), citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976); *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required

1    element of a § 1983 claim."). A person deprives another "of a constitutional right, within

2    the meaning of section 1983, if he does an affirmative act, participates in another's

3    affirmative acts, or omits to perform an act which he is legally required to do that causes

4    the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743

5    (9th Cir. 1978).

6        In this case, the First Amended Complaint pleads "factual content that allows the

7    court to draw the reasonable inference that the defendant is liable for the misconduct

8    alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). Plaintiffs have asserted acts and

9    omissions of "Each Individual Defendant", along with facts relating to mental state under

10   each cause of action. *See e.g.*, Dkt. 34 at 89-94, 102-103 (identifying the defendants

11   about whom the cause of action is directed and stating that each of them were involved

12   in the relevant acts or omissions). The First Amended Complaint asserts sufficient facts

13   at this stage, to pass the *Iqbal* plausibility standard. The Defendant's motion to dismiss

14   on this basis is DENIED.

15       C.  Plaintiffs' Procedural Due Process Claim

16       Plaintiffs, in their First Amended Complaint, allege they were deprived of their

17   constitutionally protected property interest in their employment. Dkt. 34 at ¶439, 445.

18   Specifically, Plaintiffs allege that it was a "predetermined decision to terminate religious

19   objectors" and the termination hearings held were a "sham." *Id.* ¶266, 322.

20       "A procedural due process claim has two elements: (1) a deprivation of a

21   constitutionally protected liberty or property interest, and (2) a denial of adequate

22   procedural protections." *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir.

23

24

25

2021).  "[T]he essential requirements of due process ... are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Public employees are entitled to "oral or written notice of the charges against [them]" and "an opportunity to present [their] side of the story" before they are terminated. *Id.* Notice and opportunity can be provided without a formal hearing. *Id.* at 545. An employee's procedural due process rights are satisfied if he "[can] respond orally and in writing and present rebuttal affidavits" disputing the reasons for his termination. *Id.* at 542. A pre-termination hearing must, at bottom, afford an employee a *meaningful* opportunity to be heard. *Loudermill,* 470 U.S. at 546.

Accordingly, Plaintiffs are entitled to relief if they can demonstrate that their *Loudermill* hearings were essentially "sham" proceedings at which Defendants informed them of an existing and inflexible decision to terminate her employment. Stated differently, Plaintiffs are entitled to relief if they can prove that Defendants decided to terminate their employment before their pre-termination hearings and could not have been influenced by anything Plaintiffs may have said during the meetings.

Here, Plaintiffs have presented sufficient facts to state a procedural due process claim. For example, Plaintiff Ann-Maree Tedaldi states that it was a predetermined decision to terminate her employment because she was denied accommodation even though she teleworked from home throughout COVID-19. Dkt. 34 at ¶266. Plaintiffs allege the "*Loudermill* was not held for a discussion, but to confirm the decision already reached. Plaintiffs generally each received final decision letters within 1-2 hours following the completion of the sham hearing". Dkt. 34 at ¶325.

1   At this stage of the case, the Court find Plaintiffs have sufficiently pled a procedural

2   due process claim. Defendants motion to dismiss Plaintiffs' due process claim is

3   DENIED.

4   D.  Plaintiffs' Free Exercise Claim

5   The First Amendment states that "Congress shall make no law respecting an

6   establishment of religion, or prohibiting the free exercise thereof." This prohibition

7   applies to the states through the 14th Amendment. *Church of the Lukumi Babalu Aye,*

8   *Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). The Free Exercise Clause prohibits

9   any "law [that] discriminates against some or all religious beliefs or regulates or prohibits

10  conduct because it is undertaken for religious reasons." *Id.* at 532.

11  To state a claim under the Free Exercise Clause, a plaintiff must show the

12  challenged government action "substantially burdens a religious practice and either is

13  not justified by a substantial state interest or is not narrowly tailored to achieve that

14  interest." *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 890 (9th Cir. 2022). "A

15  substantial burden ... place[s] more than an inconvenience on religious exercise; it must

16  have a tendency to coerce individuals into acting contrary to their religious beliefs or

17  exert substantial pressure on an adherent to modify his behavior and to violate his

18  beliefs." *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015). Notably, "the right

19  of free exercise does not relieve an individual of the obligation to comply with a 'valid

20  and neutral law of general applicability on the ground that the law proscribes (or

21  prescribes) conduct that his religion prescribes (or proscribes).' " *Doe v. San Diego*

22  *Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021), *reconsideration en banc denied*,

23  22 F.4th 1099 (9th Cir. 2022) (citation omitted).

24

25

ORDER ON DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT - 13

In analyzing Free Exercise claims, "[t]he threshold inquiry is whether a challenged law is 'neutral or generally applicable.' " *Id.* (citing *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 881 (1990)). "[L]aws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1976 (2021). A government entity "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton*, 141 S. Ct. at 1877.

A law is not generally applicable when it "invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions " or when it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* "A law is not generally applicable if the record before the court 'compels the conclusion" that suppression of religion or religious practice is the object of the law at issue.' " *Bacon v. Woodward*, No. 2:21-CV-0296-TOR, 2021 WL 5183059, at *4 (E.D. Wash. Nov. 8, 2021) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993)).

With respect to Plaintiff's objection to the vaccination requirement, the Ninth Circuit has concluded that the vaccine mandate of a school district was neutral and generally applicable even when it did not include any religious exemptions, because the interest advanced by the district was the "health and safety" of students. *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021), *reconsideration en banc denied*, 22 F.4th 1099 (9th Cir. 2022).

"COVID-19 vaccination requirements have been held to be facially neutral when they apply to an entire category (i.e., all employees) and 'do[ ] not single out employees who decline vaccination on religious grounds.' " *UnifySCC v. Cody*, No. 22-CV-01019-BLF, 2022 WL 2357068, at *6 (N.D. Cal. June 30, 2022) (quoting *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021) (*per curiam*)); *see also Bacon v. Woodword*, No. 2:21-CV-0296-TOR, 2021 WL 5183059, at *4 (E.D.Wash. Nov. 8, 2021) (city employee vaccination requirement deemed neutral because it applied to all employees, and "the City recognizes exemptions for those who qualify for accommodations due to their sincerely held religious beliefs"). Additionally, "[t]he existence of religious exemptions does not undermine facial neutrality." *UnifySCC*, 2022 WL 2357068, at *6 (citing *Kane v. De Blasio*, 29 F.4th 152, 165 (2d Cir. 2021)).

In this case, the First Amended Complaint does not allege sufficient facts to demonstrate a plausible claim that the vaccination policy is not neutral or generally applicable. On its face, the policy applies to all employees. It offers an exemption from the requirement for those with sincerely held religious beliefs; this does not show the absence of neutrality. *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th at 1180; *UnifySCC*, 2022 WL 2357068, at *6.

But the Plaintiff has clarified, in response to the Defendants' motion to dismiss, that it does not challenge the formal policy on its face. See Dkt. 44 at 11-12.

In their motion to dismiss, the Defendants have not argued that the Plaintiffs have failed to state a claim regarding a custom or practice that was an unwritten policy, or an as-applied challenge under the Free Exercise Clause.

Although Defendants have not addressed, in their motion to dismiss, this aspect of Plaintiff's First Amended Complaint, to the extent the motion to dismiss could be interpreted as including such a challenge, the Defendant's motion to dismiss is DENIED. *See generally, Frederick Douglass Foundation, Inc. v. District of Columbia,* 82 F.4th 1122, 1146 (D.C. Cir. 2023) (analyzing an Equal Protection challenge, and the difference between facial invalidity, selective enforcement, and First Amendment as-applied challenge); *Hoye v. City of Oakland,* 653 F.3d 835, 840, 855 (9th Cir. 2011) (re-framing a First Amendment free speech "as applied" argument and characterizing it as selective enforcement challenge and recognizing an Equal Protection challenge, citing *Yick Wo v. Hopkins,* 118 U.S. 356 (1886)).The unwritten policy is being challenged by the Defendants as a violation of the First Amendment's Free Exercise Clause, and also as a Due Process and Equal Protection challenge. See Dkt. 34, First Amended Complaint, at 98-101, ¶¶ 499, 500, 501, 504, 508, 509, 510, 511, 512.

In this way, Plaintiffs' claim is similar to a claim recognized by the Ninth Circuit's analysis in *Hoye v. City of Oakland,* 653 F.3d 835, 840, 855. The formal, written policy on its face may be neutral, but the Plaintiffs are challenging – under the Free Exercise Clause, Due Process Clause, and Equal Protection Clause -- acts or omissions of City of Seattle officials, and Seattle Fire Department officials, that allegedly were an informal policy comprised of customs and practices. Three different legal and factual theories may satisfy the policy requirement under *Monell v. Dept. of Soc. Servs. Of City of New York,* 436 U.S. 658 (1978): First, a policy that has been expressly adopted; second, a practice or custom that is long-standing and amounts to an informal policy; third, a decision made by an official policymaker. *Ellins v. city of Sierra Madre,* 710 F.3d 1049,

1066 (9th Cir. 2013); *See, Temple of 1001 Buddhas v. City of Fremont,* 588 F. Supp.3d 1010, 1022-1023 (N.D. Cal. 2023) (granting leave to amend a claim under the First Amendment Free Exercise Clause concerning Plaintiff's allegations of customs or practices of the City of Fremont).

For these reasons, the First Amended Complaint does not state a viable First Amendment Free Exercise claim as to the facial validity of the City's and the Seattle Fire Department's formal policy.

To the extent the First Amended Complaint may be interpreted as a claim that the City's policy violates the Free Exercise Clause on its face, the motion to dismiss is GRANTED.

To the extent the First Amended Complaint raises a claim recognized by the Ninth Circuit's analysis in *Hoye v. City of Oakland,* 653 F.3d 835, 840, 855 such that the formal, written policy on its face may be neutral, but the Plaintiffs are challenging – under the Free Exercise Clause, Due Process Clause, and Equal Protection Clause -- acts or omissions of City of Seattle officials, and Seattle Fire Department officials, that allegedly were an informal policy comprised of customs and practices, or is an as-applied challenge to the policies of the City and the Seattle Fire Department, the Defendants' motion to dismiss is DENIED.

E.  Plaintiffs' Claim for Arbitrary and Capricious action

"A regulation is arbitrary and capricious only if it is willful, unreasoning, and taken without regard to the attending facts or circumstances." *Garcia v. Dep't of Soc. & Health Servs.*, 10 Wash. App. 2d 885, 918, 451 P.3d 1107 (2019). "The scope of review under

the arbitrary and capricious standard is very narrow, and the party asserting it carries a heavy burden." *Id.* Evaluating whether an agency's decision was arbitrary and capricious involves evaluating the evidence considered by the agency in making its decision. *Pierce County Sheriff v. Civil Serv. Comm'n,* 98 Wash.2d 690, 695, 658 P.2d 648 (1983).

Because at this stage, the Court must accept the factual allegations in the First Amended Complaint as true and construe such allegations in the light most favorable to the Plaintiffs, the Court DENIES Defendants' motion to dismiss Plaintiffs' arbitrary and capricious claim. The Court will be more informed of the evidence considered by Defendants in making their decisions after discovery concludes.

F.  Plaintiffs' Public Policy Tort Claim

Plaintiffs allege the public policies at issue are "employment discrimination without just cause" (Dkt. 34 at ¶525) and violation of "employment agreements" that prohibit termination without just cause (Dkt. 34 at ¶524).

To satisfy the elements of a claim of wrongful discharge in violation of public policy, the "plaintiff must prove (1) the existence of a clear public policy (clarity element); (2) that discouraging the conduct in which [he or she] engaged would jeopardize the public policy (jeopardy element); and (3) that the public-policy-linked conducted caused the dismissal (causation element)." *Hubbard v. Spokane County,* 146 Wash.2d 699, 707, 50 P.3d 602 (2002). Then, (4) "the defendant must not be able to offer an overriding justification for the dismissal (absence of justification element)."

Courts have generally limited public policy tort actions to situations in which the employee is discharged for (1) refusing to commit an illegal act; (2) performing a public

1   duty or obligation; (3) exercising a legal right or privilege; or (4) engaging in

2   "whistleblowing" activity. *Dicomes v. State*, 113 Wash.2d 612, 782 P.2d 1002, 1006–07

3   (1989). If an employee's public policy tort action falls into one of the four *Dicomes*

4   categories, they establish a prima facie case of wrongful discharge in violation of public

5   policy by showing that (1) their discharge may have been motivated by reasons that

6   contravene a clear mandate of public policy; and (2) their public-policy-linked conduct

7   was a significant factor in the decision to discharge him. *Martin v. Gonzaga Univ.*, 191

8   Wash.2d 712, 425 P.3d 837, 844 (2018). The *McDonnell Douglas* burden-shifting

9   framework applies. *Martin*, 425 P.3d at 844–45.

10      Defendants argue Plaintiffs should be precluded from pursing a wrongful discharge

11  in violation of public policy claim where other statutes, such as the WLAD, provide an

12  adequate statutory remedy for the alleged violation of public policy. *See* Dkt. 38 at 20-

13  21.

14      Between 2002 and 2011, the Washington Supreme Court followed a tangential line

15  of reasoning regarding the jeopardy element of the wrongful discharge tort, concluding

16  that a plaintiff could not prove that his or her conduct was necessary for the effective

17  enforcement of a public policy (*i.e.*, that the public policy was in jeopardy) unless they

18  proved that no other statutory provision existed that would adequately protect that

19  policy. *See Rose v. Anderson Hay and Grain Co.*, 184 Wn.2d 268, 275-280 (2015)

20  (tracing the evolution of the tort in Washington).

21      In a trio of cases decided in 2015, the Supreme Court recognized that requiring

22  plaintiff to show the inadequacy of alternative statutory remedies was a departure from

23  its earlier precedents that had created confusion and harmfully deprived aggrieved

24

25

ORDER ON DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT - 19

1  litigants of a rightful tort claim without any corresponding benefit to defendants. *Rose*,

2  184 Wn.2d at 281-82. The requirement was therefore disavowed, and the contrary line

3  of cases was overruled. Courts no longer reject a wrongful discharge in violation of

4  public policy because there are adequate statutory remedies: rather, dismissal of the

5  tort claim is appropriate only where the alternative statutory remedy is intended to be

6  exclusive. *Id.* at 285-86. Defendants have not shown this.

7      Plaintiffs' conduct arguably falls into one of the four *Dicomes* categories, i.e.,

8  asserting a legal right, and Defendants have not shown that any alternative statutory

9  remedy is intended to be exclusive. Plaintiffs state a sufficient public policy tort claim at

10  this stage. The Court DENIES Defendants' motion to dismiss this claim.

11      G.  Plaintiffs' Takings Clause claim

12      The Takings Clause of the Fifth Amendment, which applies to local governments

13  through the Fourteenth Amendment, provides: "[N]or shall private property be taken for

14  public use, without just compensation." To prove a taking, each plaintiff must establish a

15  protected property interest under Washington law. *See Vandevere v. Lloyd*, 644 F.3d

16  957, 963 (9th Cir. 2011).

17      Plaintiffs allege they "each were deprived of wages, pension rights, and other

18  contractual benefits of employment by the wrongful actions of Defendants," and

19  "intangible property rights, including valid contracts, are protected by the Takings

20  Clause." Dkt. 34 at ¶539-546. Plaintiffs, however, miss a fundamental element of the

21  Takings Clause –the private property must have been used for *public use.* Plaintiffs fail

22  to allege that their wages, pension rights and "other contractual benefits of employment"

23  were used for public use.

24

25

1    Therefore, Plaintiffs have failed to state a claim under the Takings Clause and

2    Defendants' motion to dismiss this claim is GRANTED.

3    H.  Plaintiffs' Wage Theft Claim

4    Under the first paragraph of RCW 49.48.010 (2020) (amended 2022), "[w]hen any

5    employee shall cease to work for an employer, whether by discharge or by voluntary

6    withdrawal, the wages due him or her on account of his or her employment shall be paid

7    to him or her at the end of the established pay period." The second paragraph provides:

8    "It shall be unlawful for any employer to withhold or divert any portion of an employee's

9    wages unless the deduction is" required by law, agreed to by employer and employee,

10   or for medical services. RCW 49.48.010.

11   Plaintiffs have not plausibly alleged a violation of the statute. While lost wages may

12   be an element of the damages for Plaintiffs' employment claims, Plaintiffs have not

13   alleged that they have been unlawfully deprived of wages other than as damages

14   resulting from other claims. To assert a plausible wage theft claim, Plaintiffs would need

15   to assert a separate cause of action alleging, for example, that Defendants did not pay

16   Plaintiffs for all hours worked before they were terminated from their employment or

17   illegally deducted an amount from their paychecks.

18   Thus, Plaintiffs' have failed to state a wage theft claim, and Defendants' motion to

19   dismiss this claim is GRANTED.

20   I.  Plaintiffs' Breach of Contract Claim

21   In Washington, "[a] breach of contract is actionable only if the contract imposes a

22   duty, the duty is breached, and the breach proximately causes damage to the claimant."

23

24

25

ORDER ON DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT - 21

1    *C 1031 Properties, Inc. v. First Am. Title Ins. Co.*, 175 Wash. App. 27, 33–34, 301 P.3d

2    500 (2013).

3         Failing to identify a breached contractual provision dooms a breach of contract

4    claim. *See, e.g.*, *Shroyer v. New Cingular Wireless Services,* 622 F.3d 1035, 1041-42

5    (9th Cir. 2010) (although the first amended complaint did not point to the specific

6    contractual provisions that Plaintiff alleges were violated, Plaintiff identified the relevant

7    contractual provisions in his opposition to the 12(b)(6) motion, thereby successfully

8    stating a breach of contract claim); *Ogorsolka v. Residential Credit Sols., Inc.*, No. 2:14-

9    CV-00078-RSM, 2014 WL 2860742, at *7 (W.D. Wash. June 23, 2014) (concluding that

10   because the complaint "failed to identify any relevant portion of a contract that

11   Defendants breached," the plaintiffs failed to state a cognizable breach of contract

12   claim); *BP W. Coast Prod., LLC v. Shalabi*, No. C11-1341-MJP, 2012 WL 441155, at *4

13   (W.D. Wash. Feb. 10, 2012) ("A breach of contract claim must point to a provision of the

14   contract that was breached.").

15        Plaintiffs allege there "existed a binding contract between each Plaintiff and the

16   Department" and the Department breached this contract by terminating Plaintiffs without

17   just cause. Dkt. 34 at ¶470-480. Plaintiffs further allege Defendants' actions violated

18   Plaintiffs' pension rights, which were established by contract. *Id.* at ¶477. Plaintiffs,

19   however, failed to identify the specific provisions allegedly breached by Defendants in

20   both their First Amended Complaint and in their response to Defendants' motion to

21   dismiss. The Court does not expect Plaintiffs to attach copies of all their challenged

22   contracts to the First Amended Complaint; yet, Plaintiffs are required to plead their

23   breach of contract claim with more specificity to clarify, for example, what were the

24

25

ORDER ON DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT - 22

1   terms of the "just cause" portion of their employment contract that was allegedly

2   breached by the Defendants, whether Plaintiffs' pension rights were specified in a

3   separate contract, and what were the terms of those pension rights the Defendants

4   allegedly breached.

5       Thus, Plaintiffs have not sufficiently pled a breach of contract claim at this time.

6   Defendants' motion to dismiss this claim is GRANTED.

7       J.   <u>Plaintiffs' Failure to Accommodate under Washington Law Against Discrimination</u>

8       Plaintiffs claim Defendants failed to accommodate their sincerely held religious

9   beliefs in violation of the Washington Law Against Discrimination (WLAD), RCW 49.60.

10      Under the WLAD, employers may not refuse to hire, discharge, bar from

11  employment, or discriminate against in compensation or other terms of employment any

12  person because of their religion. RCW § 49.60.180; *see Kumar v. Gate Gourmet, Inc.*,

13  180 Wash.2d 481, 325 P.3d 193, 203 (2014) (en banc). The WLAD creates a cause of

14  action for failure to reasonably accommodate an employee's religious practices. *Kumar*,

15  325 P.3d at 203. To plead a WLAD failure-to-accommodate claim, Plaintiffs must

16  plausibly allege substantially the same elements as a Title VII failure-to-accommodate

17  claim. *See id.*

18      A plaintiff establishes a prima facie claim of failure to accommodate a religious belief

19  or practice by showing that (1) he or she has a bona fide religious belief, the practice of

20  which conflicts with employment duties; (2) he or she informed the employer of the

21  beliefs and the conflict; and (3) the employer responded by subjecting the employee to

22  threatened or actual discriminatory treatment. *See id.*

23

24

25

1    "Once an employee establishes a prima facie case of failure to accommodate

2    religion, the burden shifts to the employer to show 'either that it initiated good faith

3    efforts to accommodate reasonably the employee's religious practices or that it could

4    not reasonably accommodate the employee without undue hardship.' " *Bolden-Hardge*

5    *v. Off. of Cal. State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023) (quoting *Tiano v.*

6    *Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998)).

7        Regarding establishing a bona fide religious belief in conflict with an employment

8    duty, "[a] religious belief need not be consistent or rational to be protected under Title

9    VII, and an assertion of a sincere religious belief is generally accepted." *Keene v. City &*

10   *Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023)

11   (citing *Thomas v. Rev. Bd.*, 450 U.S. 707, 714 (1981)). Indeed, the court may not

12   "question the legitimacy of [an individual's] religious beliefs regarding COVID-19

13   vaccinations." *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 n. 3 (9th Cir.

14   2021) (citing *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 584 U.S. 617

15   (2018)).

16       Plaintiffs here have stated a claim for failure to reasonably accommodate their

17   religious practices. Their First Amended Complaint alleges that (1) they hold a sincere

18   religious belief that conflicted with Defendants' vaccine mandate; (2) they informed

19   Defendants of this conflict; and (3) Defendants failed to consider the accommodations

20   proposed by Plaintiffs, leaving Plaintiffs to choose between being terminated or taking a

21   vaccine in direct violation of their sincerely held religious beliefs. *See* Dkt. 34 at ¶¶481-

22   491.

23

24

25

1   Plaintiffs have met their burden to establish a prima facie religious accommodation

2   claim. *Berry v. Dep't of Soc. Serv.,* 447 F.3d 642, 655 (9th Cir.2006). Thus, Defendants'

3   motion to dismiss Plaintiffs' failure to accommodate claim is DENIED.

4                                          **CONCLUSION**

5   For the foregoing reasons, the Court DENIES Defendants' motion to dismiss the

6   following claims: (1) procedural due process, (2) First Amendment Free Exercise, Due

7   Process, and Equal Protection regarding the Defendants' unwritten customs or

8   practices, or an as-applied challenge (3) arbitrary and capricious action; (4) public

9   policy; (5) and failure to accommodate.

10   The Court GRANTS Defendants' motion to dismiss: (1) Plaintiffs' Takings Clause

11   claim under the Fifth Amendment, (2) wage theft claim, (3) claim under the First

12   Amendment Free Exercise Clause regarding the facial validity of the Defendants' formal

13   policy, and (4) breach of contract claim.

14   Where a motion to dismiss is granted, a district court should provide leave to

15   amend unless it is clear that the complaint could not be saved by any

16   amendment. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.

17   2003). Even after a complaint has been amended or a responsive pleading has been

18   served, the Federal Rules of Civil Procedure provide that "[t]he court should freely give

19   leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit

20   requires that this policy favoring amendment be applied with "extreme

21   liberality." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.

22   1990). "In determining whether leave to amend is appropriate, the district court

23   considers 'the presence of any of four factors: bad faith, undue delay, prejudice to the

24

25

1  opposing party, and/or futility.' " *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d

2  708, 712 (9th Cir. 2001) (quoting *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880

3  (9th Cir. 1999)).

4        In assessing Plaintiffs' Takings Clause claim, wage theft claim, Free Exercise

5  claim regarding whether the formal policy of the City and Fire Department was facially

6  valid under the First Amendment, and breach of contract claim, the Court finds it is

7  appropriate to allow Plaintiffs to file a motion for leave to amend their breach of contract

8  claim only. The Court finds allowing Plaintiffs to amend the remaining claims to be futile.

9        As discussed above, Plaintiffs repeatedly mention employment and pension

10  contracts in the First Amended Complaint but fail to specify any of the provisions that

11  were allegedly breached by Defendants. It appears that this claim potentially could be

12  supported if Plaintiffs choose to again amend their complaint and specify the provisions

13  they allege to have been breached.

14

15

16

17

18

19

20

21

22

23

24

25

ORDER ON DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT - 26

Therefore, the Court will allow Plaintiffs to file a motion for leave to file a second amended complaint to include amendments relating only to their breach of contract claim. Plaintiffs are directed to comply with Local Civil Rule 15 when submitting their motion and the **deadline for their motion for leave to amend is: July 2, 2024**. If Plaintiffs do not file a motion to amend, the Court will proceed with the Second Amended Complaint (Dkt. 34) as the operative complaint and will proceed only with Plaintiffs' claims that have not been dismissed. The other claims -- Takings Clause claim, wage theft claim, Free Exercise claim regarding whether the formal policy of the City and Fire Department was facially valid under the First Amendment -- identified above, have been dismissed and as to those claims, leave to amend is denied.

Dated this 18th day of June, 2024.

Theresa L. Fricke
United States Magistrate Judge

ORDER ON DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT - 27