UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFFERY VALE, et al.,

                        Plaintiff,

        v.

CITY OF SEATTLE, et al.,

                        Defendants.

Case No. 2:23-cv-01095-TLF

ORDER CONFIRMING WWLG HAS WITHDRAWN AS COUNSEL FOR PLAINTIFFS; ORDER DENYING MOTION TO CONSIDER ATTORNEY LIEN CLAIM (DKT. 144)

The matters before the Court are the Western Washington Law Group's ("WWLG") motions to withdraw as plaintiffs' counsel and to determine its attorney lien claim. Dkt. 144. The parties unanimously consent to proceed before a Magistrate Judge. Dkt. 21. The Court held oral argument on March 20, 2026. Dkt. 162.

The Court **confirms (no motion was required, so the Court declines to enter an order) that WWLG has properly withdrawn** as plaintiffs' counsel.  The Court otherwise **DENIES** WWLG's motion to determine its attorney lien claim as it declines to exercise its ancillary jurisdiction.

## I.    BACKGROUND

In 2023, plaintiffs filed a complaint in this Court against the City of Seattle among other defendants. Dkt. 1. Plaintiffs alleged they were "continuously threatened with termination," "wrongfully denied accommodations and terminated, forced to resign, or retire for non-compliance with a new State requirement for COVID-19 vaccination . . . in

ORDER CONFIRMING WWLG HAS WITHDRAWN AS COUNSEL FOR PLAINTIFFS; ORDER DENYING MOTION TO CONSIDER ATTORNEY LIEN CLAIM (DKT. 144) - 1

violation of their Constitutional and statutory rights." Dkt. 1 at 2. The operative complaint (second amended complaint) was filed September 20, 2024. Dkt. 67.

On October 21, 2024, WWLG appeared as co-counsel for plaintiffs alongside their existing counsel from Arnold Jacobowitz & Alvarado ("AJA"). Dkt. 75.

On January 29, 2026, WWLG filed an "Attorney's Lien Claim Notice." Dkt. 143. WWLG states that "[p]rior to October 21, 2024, Plaintiffs, by and through their attorney of record Nathan J. Arnold of AJA, hired WWLG to assist it in representing Plaintiffs in this matter." Dkt. 143 at 1. However, on "December 23, 2025, AJA, on behalf of Plaintiffs, discharged WWLG effective December 31, 2025." Dkt. 143 at 2; Dkt. 145-2 (discharge letter). WWLG then "rendered an invoice for $10,520.25 for services and costs reasonably expended representing Plaintiff through December 31, 2025." Dkt. 143 at 2. WWLG now moves to "withdraw as Plaintiffs' attorney of record in this matter, determine the validity and amount of its Attorney Lien, and [r]equire Plaintiffs pay WWLG the amount it is owed in connection with WWLG's withdrawal." Dkt. 144 at 1.

## II.   WWLG'S MOTION TO WITHDRAW

WWLG first moves to withdraw as plaintiffs' counsel. Dkt. 144 at 4.

Under LCR 83.2(b)(3), "[w]here a party is represented by multiple attorneys from the same or different firms and . . . withdraw[al] will not leave the client without representation, leave of the court to withdraw is not required."

And, LCR 83.2(b)(3) states the "remaining or withdrawing attorney(s) shall file a Notice of Withdrawal . . . signed by the withdrawing attorney(s) and the remaining attorney(s)." *Id.* "If circumstances prevent obtaining the signature of the withdrawing

ORDER CONFIRMING WWLG HAS WITHDRAWN AS
COUNSEL FOR PLAINTIFFS; ORDER DENYING
MOTION TO CONSIDER ATTORNEY LIEN CLAIM
(DKT. 144) - 2

attorney(s), the Notice must state those circumstances in sufficient detail to satisfy the court that those circumstances in fact preventing obtaining signature." *Id.*

The Court has not received a separate LCR 83.2(b)(3) Notice signed by counsel from both WWLG and AJA. But, as the Court and parties discussed at oral argument, *see* Dkt. 162, the parties' filings and argument on the present motion are sufficient to satisfy the parties' LCR 83.2(b)(3) obligations.

The Court confirms WWLG has properly withdrawn as plaintiffs' counsel. The operative date of WWLG's withdrawal is the date WWLG filed its Motion to Withdraw (Dkt. 144, January 29, 2026). This is so because WWLG's motion explained the "circumstances . . . preventing obtaining signature" as required under LCR 83.2(b)(3). *E.g.* Dkt. 144 at 3-4.

### III.    WWLG'S ATTORNEY LIEN MOTION

#### A. LEGAL FRAMEWORK

WWLG next moves for the Court to determine its attorney lien claim. Dkts. 143-44.

In Washington State, attorney liens are a creation of statute. *Asset Realty, LLC v. Wilson*, No. C21-81-RSM, 2023 WL 1928085 at *3 (W.D. Wash. Feb. 10, 2023) (citing RCW 60.40.010-.030); *Washington v. Starbucks Corp.*, No. C08-1144-JCC, 2009 WL 10675533 at *3 (W.D. Wash. Sept. 22, 2009) (same).

Adjudication of an attorney lien claim, however, "need *not* occur at the court with jurisdiction over the dispute that gave rise to the lien itself" and may occur in any proper forum. *Asset* Realty, 2023 WL 1928085 at *2 (emphasis in original); *Washington*, 2009 WL 10675533 at *1.

ORDER CONFIRMING WWLG HAS WITHDRAWN AS
COUNSEL FOR PLAINTIFFS; ORDER DENYING
MOTION TO CONSIDER ATTORNEY LIEN CLAIM
(DKT. 144) - 3

Federal courts have limited subject matter jurisdiction. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908); *see also* CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 3523.2 (3d ed. 2008) ("A federal district court may hear a case only if it falls within the judicial power of Article III of the Constitution and a statutory grant of subject matter jurisdiction.").

Even with these jurisdictional limits, federal courts can utilize ancillary jurisdiction. *Fed. Sav. & Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1039-40 (9th Cir. 2004). Generally, federal courts "have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379-80 (1994).

The burden of establishing jurisdiction rests on the party asserting jurisdiction, *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936), here WWLG. Dkt. 144.

## B. DISCUSSION

This Court has previously held it "has the authority to adjudicate many ancillary issues involving attorney fees." *Asset Realty*, 2023 WL 1928085 at *3; *Washington*, 2009 WL 10675533 at *3. And "[i]t is equally clear that the Court may exercise its discretion to refuse to hear ancillary issues involving attorney fees." *Id.*

WWLG argues that "adjudication of an attorney lien proceeding is considered an ancillary matter to the underlying case," and primarily analogizes to this Court's decision

ORDER CONFIRMING WWLG HAS WITHDRAWN AS
COUNSEL FOR PLAINTIFFS; ORDER DENYING
MOTION TO CONSIDER ATTORNEY LIEN CLAIM
(DKT. 144) - 4

to utilize ancillary jurisdiction in *Jacobson v. Krafchick*, No. C13–1519–JCC, 2015 WL 852608 (W.D. Wash. Feb. 24, 2025).[1] Dkts. 144, 148.

The attorney in *Jacobson* represented a plaintiff "in her ERISA case against her former employer and insurer . . . [u]nder [a] contingency fee agreement." 2015 WL 852608 at *1. After a settlement, plaintiff "indicated that she would not pay the fees owed to [her attorney], and he filed a Notice of Attorney's Lien." *Id.* This Court considered the attorney lien claim, holding "adjudication of an attorney lien proceeding is considered an ancillary matter to the underlying case." *Id.* at *2.

The Ninth Circuit has held claims for "attorney liens for services performed in connection with a particular action . . . might [] successfully invoke[] ancillary jurisdiction." *Fed. Sav. & Loan Ins. Corp.*, 364 F.3d at 1041. But, a "'federal court has no jurisdiction to adjudicate the amount of fees properly owing between [attorney and client] with respect to matters unrelated to litigation before the court.'" *Id.* at 1041-42 (alteration in original) (quoting *Jenkins v. Weinshienk*, 670 F.2d 915, 919 (10th Cir. 1982)).[2]

---

[1] WWLG filed a "Notice of Supplemental Authority" on March 23, 2026. Dkt. 209. Therein, WWLG cites a recent but unpublished Ninth Circuit case. *Suzuki c. Marinepolis USA, Inc.*, No. 25-499, 2026 WL 799739 (9th Cir. Mar. 23, 2026). This opinion is unpublished and is not binding, meaning the Court need not consider it further. *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1195 (9th Cir. 2024).

[2] The Tenth Circuit additionally observed:

> Except for the attorney's assertion of a retaining lien and consequent refusal to give up papers relevant to the dispute before the court, the attorney-client dispute does not relate to the case before the court. In no real sense does the dispute arise from the transaction that was the basis of the principal proceeding, nor is it an integral part of that proceeding; the court cannot determine the merits of the dispute without a substantial new factfinding proceeding; and resolving the dispute is not essential to protect the integrity of the principal proceeding.

*Jenkins*, 670 F.2d at 918.

ORDER CONFIRMING WWLG HAS WITHDRAWN AS COUNSEL FOR PLAINTIFFS; ORDER DENYING MOTION TO CONSIDER ATTORNEY LIEN CLAIM (DKT. 144) - 5

The Ninth Circuit cited approvingly to a matter which "reject[ed] ancillary jurisdiction over claim by attorney against co-counsel that he had wrongfully terminated their association in the case and deprived him of share of contingent fee." *Id.* at 1042 (citing *Taylor v. Kelsey*, 666 F.2d 53, 54 (4th Cir.1981)). *Taylor* involved a "dispute between two Virginia attorneys" after one attorney "terminated" their association and the other "asserted that he was entitled to one-third of the contingent fee." 666 F.2d at 54. The Fourth Circuit determined "the dispute bore no relationship to the . . . litigation and had no effect upon either the litigants or the outcome of the case." *Id.* Instead, "the controversy arose purely from a private contract dispute between two Virginia residents." *Id.*

This Court has also at least twice declined to consider attorney lien claims, reasoning that the "typical justifications for ancillary jurisdiction, like promoting judicial economy and protecting the authority of the federal courts, do not attach here." *Asset Realty*, 2023 WL 1928085 at *4; *Washington*, 2009 WL 10675533 at *3.

For example, *Asset Realty* involved "a lengthy and convoluted history in multiple forums outside this Court." 2023 WL 1928085 at *1. This included a matter where "[u]nbeknownst to this Court, Asset Realty and WKG were meanwhile embroiled in litigation over allegedly unpaid fees in King County Superior Court." *Id.* at *2.

Here, the record indicates WWLG's attorney lien motion is part of a broader dispute between WWLG and AJA which stretches beyond the present matter. For example, in AJA's letter to WWLG dated December 23, 2025, it informed WWLG that it "terminate[d]" the "agreement reached between our respective firms regarding WWLG's providing services to clients represented by AJA" in multiple proceedings. Dkt. 145-2

ORDER CONFIRMING WWLG HAS WITHDRAWN AS
COUNSEL FOR PLAINTIFFS; ORDER DENYING
MOTION TO CONSIDER ATTORNEY LIEN CLAIM
(DKT. 144) - 6

(referencing also "the *Freudenberg* matter" and "the *Cerenzie* matter."). Further, a January 2026 email from counsel representing AJA references other separate proceedings, including alleging WWLG filed a "baseless lawsuit . . . apparently in retaliation for [AJA] terminating the subcontractor agreement." Dkt. 145-3.

Additionally, these communications reveal the termination of the agreement between AJA and WWLG stemmed from a disagreement on whether WWLG was entitled to "'an hourly fee arrangement'" or an "agreed-to flat fee." Dkt. 145-2 (alleging also that "WWLG followed through with its threats to stop work absent an immediate change to an hourly fee arrangement.").

The present matter thus appears more analogous to *Taylor*, which involved a dispute between co-counsel concerning their fee arrangement, and *Asset Realty* where the dispute appeared to span across multiple cases. *Jacobson* is distinguishable because it involved a direct attorney-client dispute.

The Court thus **DENIES** WWLG's motion to determine its attorney lien claim and declines to utilize its ancillary jurisdiction.[3]

### IV.    CONCLUSION

For the reasons above, the Court **ORDERS**:

1)  It is confirmed that WWLG has withdrawn in accordance LCR 83.2(b) and does not represent plaintiffs.

    a.  The date WWLG filed its motion to withdraw (January 29, 2026) is the operative date of withdrawal. Dkt. 144.

---

[3] As the Court declines to address WWLG's attorney lien claim, it need not address WWLG's request to block Roberta Tester from appearing pro hac vice. Dkt. 144 at 6.

ORDER CONFIRMING WWLG HAS WITHDRAWN AS
COUNSEL FOR PLAINTIFFS; ORDER DENYING
MOTION TO CONSIDER ATTORNEY LIEN CLAIM
(DKT. 144) - 7

2)  WWLG's motion to determine its attorney lien claim is **DENIED**.

Dated this 30th day of March, 2026.

Theresa L. Fricke
United States Magistrate Judge

ORDER CONFIRMING WWLG HAS WITHDRAWN AS
COUNSEL FOR PLAINTIFFS; ORDER DENYING
MOTION TO CONSIDER ATTORNEY LIEN CLAIM
(DKT. 144) - 8